UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FRANCIS L. OSIER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   Civil No. 06-125-P-H |
| | ) |
| NORTH SCHOOL, | ) |
| | ) |
| Defendants | ) |

**ORDER GRANTING APPLICATION TO PROCEED
WITHOUT PREPAYMENT OF FEES AND
RECOMMENDED DECISION ON COMPLAINT**

Francis L. Osier filed a complaint on July 25, 2006, against "North School,"[1] a Portland-based apartment complex that, apparently, primarily offers living space to members of the retirement community. According to his complaint, Mr. Osier resided at the North School for two years and was dissatisfied with his stay there. In particular, he complains that there was inadequate heat and that management did not attend to his complaints regarding noisy neighbors. He states that he would have remained at North School had they provided him with a warm apartment. He says that he had to leave his apartment during the day to find a warm place to stay, such as the public library. There may be a dispute concerning his security deposit, but that dispute may be pending in state court. Mr. Osier sought aid from the Governor's Office and the "office up there on housing," but to no avail. He may

---

[1] There is an obvious problem with Mr. Osier's identification of the defendant. There is a building known as either North School Housing or North School Apartments, situated at 248 Congress Street, Portland, but it is administered by Maine State Housing Authority and, possibly, Preservation Management, Inc. That information does not appear in Osier's complaint but can presently be found at the following website: http://www.mainehousing.org/download/cumbcty.pdf.

have had a lawyer assist him with some form of administrative proceeding, but that is not entirely made clear. It is not clear, either, exactly what relief he was seeking from the State of Maine or what relief he is now seeking from this court.

According to Mr. Osier, two-thirds of his North School rent was paid through a program operated by the United States Department of Housing and Urban Development. He asserts that everyone residing at North School receives a government housing subsidy. Following his departure from North School, Mr. Osier experienced difficulty obtaining alternate subsidized housing. He believes that is due to an unfavorable reference from a manager at North School. Mr. Osier indicates that he currently lives in a Travel Lodge hotel/motel, where he must pay his entire rent from his veteran's pension and social security income. He has also incurred additional storage expenses to warehouse some of his belongings. Mr. Osier wonders why he cannot receive a direct housing subsidy to apply toward rent at the Travel Lodge or another housing alternative that he may locate in the future. As noted above, his complaint does not specify the relief that he would have from North School. It is unclear whether he would wish to return there, even if he was somehow assured he would receive a heated room. I presume he wants to obtain subsidized housing. I also presume, because he names only North School as a defendant, that he would have the Court order North School to provide him with a subsidized apartment with adequate heat.

Mr. Osier's application to proceed *in forma pauperis* states that he has $10,000 in a bank account and that he receives $949.03 in total monthly income.

After reviewing Mr. Osier's complaint and his application, I issued an order to Mr. Osier to show cause why his complaint should not be dismissed from the docket based on Mr. Osier's apparent

ability to pay the filing fee and, more importantly, the absence of a federal claim, as opposed to a state law landlord-tenant dispute. (Docket No. 3.) In response, Mr. Osier asserts that he has a right to pursue a federal landlord-tenant dispute because his rent was being subsidized by the federal government. (Docket No. 4 at 1: "It is government money going to these landlords + it is to hell with the people renting from them.") He cites "section 801."[2] (Id. at 2.) He also indicates that he has a right to live in government housing. (Id. at 2.)

## Discussion

Pursuant to 28 U.S.C. § 1915, the Court may authorize the commencement of a civil action without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all assets and it is apparent that the plaintiff is unable to pay the fees. Although Mr. Osier reports having $10,000 in the bank, it also appears that his current housing and storage expenses now equal or exceed his monthly income and that his savings will be required for all of Mr. Osier's others expenses. In my view, the circumstances presented here should not require Mr. Osier to pay a $350 filing fee in order to commence this action. However, pursuant to subsection (e) of section 1915, proceedings *in forma pauperis* are subject to dismissal "at any time if the court determines that . . . the action . . . is frivolous" or otherwise fails to state a claim. 28 U.S.C. § 1915(e)(2)(B). A complaint is "frivolous" when it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Furthermore, Rule 12(h)(3) of the Federal Rules of Civil Procedure states: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3).

---

[2]   Section 801 of Title 42 of the United States Code is a temporary fiscal relief measure aimed at assisting the states. The low-income housing statutes commence with section 1437 of Title 42.

In order for the United States District Court for the District of Maine to have jurisdiction over Mr. Osier's civil action against North School, the action must involve either (1) a federal question or (2) a dispute between citizens of different states in which the amount in controversy exceeds $75,000. The pending complaint does not assert North School's citizenship and does not present a set of facts from which the Court could reasonably conclude that the dispute has a "litigation value" in excess of $75,000. See Vradenburgh v. Wal-Mart Stores, Inc., 397 F. Supp. 2d 76, 78 (D. Me. 2005).[3] Thus, the question is whether Mr. Osier has presented a federal claim. Federal question jurisdiction exists when the controversy in question "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If such a controversy exists, then the Court has the power to act and may also exercise supplemental jurisdiction over any state law claims that might arise from Mr. Osier's factual allegations. My initial doubt over the presence of a federal question arose from the fact that the dispute is plainly in the nature of a landlord-tenant dispute, a matter traditionally regulated by state law rather than federal law. However, Osier's response (Docket No. 4) has muddied the waters in that I am not sure but that he is claiming some sort of federal entitlement to decent, safe and affordable housing which has been improperly denied by a state housing authority or other governmental entity. That being the case, the issue is not whether there is federal question jurisdiction, but whether the complaint actually states a cognizable claim.

Osier's problem is that his amended complaint (if, indeed, that is what his response at Docket No. 4 is intended to be) simply does not state a claim under any cognizable theory. Osier does not

---

[3] The order in Vradenburgh involved a motion to remand a civil action to the state court. Unlike the plaintiff in that case, Mr. Osier did not initiate his action in state court and therefore this Court lacks the power to transfer to a Maine state court any state law claims that might be made out in the complaint.

allege a constitutional violation, such as denial of equal protection based on race, religion, or gender, nor does he allege he was denied due process in the context of an administrative hearing. He seems to claim, however, that he holds a federal right to housing and that this right has been infringed. Unfortunately, I am unable to identify where that right comes from and why Osier would have a private cause of action because of it against a building in Portland. Indeed, at least one circuit court has squarely held that low-income housing statutes do not provide a private right of action enforceable under 42 U.S.C. § 1983 even against the appropriate state or municipal governmental entity. See Johnson v. City of Detroit, 446 F.3d 614, 626 (6th Cir. 2006) ("Nothing in these provisions [referring to 42 U.S.C. §§ 1437, 1437f, the United States Housing Act "USHA"] establishes a clear and unambiguous intent by Congress to create privately enforceable rights under § 1983 to ensure compliance with housing quality standards.") If Osier is claiming an entitlement to an "objective monetary entitlement" under USHA, I am unable to identify the statutory source or the nature of the claim. Id. at 624 n 10 (distinguishing Wilder v. Va. Hosp. Ass'n, 496 U.S. 498 (1990), Wright v. Roanoke Redevelopment & Hous. Auth., 479 U.S. 418 (1987), and Me. v. Thiboutot, 488 U.S. 1 (1980), from Gonzaga Univ. v. Doe, 536 U.S. 273 (2002)). I read Osier's complaint to be primarily directed at the quality of the housing furnished to him and at the fact that the federal government was not receiving full value for the money it paid toward his housing. I cannot find in those allegations a private, federal right of action available to Osier. I can only conclude that this complaint fails to state a claim. Osier has been given an opportunity to amend it to state a comprehensible claim. He has failed to do so.

**Conclusion**

Based on the foregoing I now grant Osier's motion to proceed *in forma pauperis* (Docket No. 2). I further recommend that the court dismiss the action pursuant to 28 U.S.C. § 1915(e)(2)(B).

<u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

August 9, 2006